## Pursifull v. Brashears, et al.

(Decided December 10, 1918.)

### Appeal from Perry Circuit Court.

Contracts—Timber Contracts—Abandonment of.—Under the facts of this case the purchaser of standing timber was prevented from performing his contract by the seller and did not voluntarily abandon it.

P. T. WHEELER and MILLER & CRAFT for appellant.

WOOTEN & MORGAN and MORGAN & NUCKOLS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This suit was brought in the lower court by Pursifull, the appellant, against Brashears and Mowbray & Robinson Company, appellees, seeking to recover damages for the alleged breach of a timber contract he had entered into with Brashears, Pursifull claiming that Brashears refused to permit him, through his assignee, Hon, to take the timber that he had bought, and thereafter sold the same to the Mowbray & Robinson Company, who had notice of his contract: that if Brashears had not prevented Hon from taking the timber, he (Pursifull) would have made a profit of several hundred dollars, consisting of the difference in the price at which he bought the timber from Brashears and sold it to Hon. He sought to have judgment against Brashears and the Mowbray & Robinson Company for the damages so sustained.

For answer to this suit Brashears denied that he had prevented Hon from taking the timber and set up that Pursifull had abandoned the contract. The Mowbray & Robinson Company relied on the same defenses that Brashears did.

After the case had been prepared for trial the lower court entered a judgment dismissing the petition and Pursifull appeals.

It appears from the evidence that on March 14, 1911, Pursifull and Brashears entered into a written contract by which Brashears sold to Pursifull certain standing timber on a large body of land. The contract provided that in consideration of five dollars cash in hand, and the further sum of ———— dollars, payable within thirty days from the date of the contract, Brashears sold to Pursifull certain described standing trees at a specified price per tree. It further provided that the "timber be sound, growing trees, reasonably clear of defects, and each tree to have twenty-four feet or more of clear body; it being supposed that there are about 3,500 trees," and that "upon the payment of the deferred purchase price, which was to be ascertained when the trees mentioned in the contract were counted and the price thereof fixed according to the contract, that Brashears should make to Pursifull a deed conveying to him the trees and that Pursifull should have ten years thereafter in which to remove the trees from the land."

Within the thirty days Pursiful sold to George Hon all the trees that he had bought from Brashears. The contract between Hon and Pursifull provided that the trees described in the contract are "to be sound growing trees clear of defects, and each tree must have twenty-four feet of clear body or more." It will be observed that in respect to this condition in the contract, the only difference between the contract between Pursifull and Brashears and the contract between Pursifull and Hon is that in the Brashears contract it was stipulated that the trees should be "reasonably clear of defects" while in the Hon contract it was provided that the trees should be "clear of defects."

About ten days after the contract between Pursifull and Brashears was made, Hon and Pursifull went on the Brashears land for the purpose of branding the timber that Pursifull had bought from Brashears and sold to Hon, as he had the right to do. Hon, of course, was to take the trees according to the terms of the contract between Pursifull and Brashears, as he was merely the assignee of Pursifull, having only such rights as Pursifull had.

It further appears from the evidence that when Hon and Pursifull, in company with several employees, went on the land for the purpose of branding the trees, they branded a few of them on the first day and that Brashears, who was present, appeared to be dissatisfied. On the next morning when Hon and the branders went back to begin work Brashears insisted that no trees should be branded unless they were entirely clear of defects for a distance of twenty-four feet from the ground, while Hon contended that he had the right to brand trees that were "reasonably" clear of defects within twenty-four feet of the ground. After disputing about this matter for a little while Hon, finding that Brashears would not permit trees reasonably clear to be branded, quit the work and he and his men left the premises for the reason, as testified to by Hon, that if only trees that were absolutely clear of all defects were branded he would only be able to find a few trees in the boundary and not enough to pay for the trouble and expense of branding them, while on the other hand if he was permitted to brand trees that were reasonably clear of defects he could get about 3,500, the number of trees the boundary was supposed to contain.

Whether the branding of the trees was abandoned by Hon, who took the place of Pursifull, without any fault on the part of Brashears, or whether Brashears prevented Hon from branding the trees according to the contract with Purcifull, is one of the principal questions in the case. If Purcifull, through Hon, voluntarily, or without sufficient cause, refused to count and brand the trees within the thirty days this would work under the facts of this case an abandonment of the contract by Purcifull, but, on the other hand, if Purcifull, through Hon, was ready and willing and wanted to perform the contract by counting and branding the trees according to the contract within the thirty days, but was prevented from so doing by Brashears, then the failure to count and brand them within the thirty days would not work an abandonment of the contract by Purcifull.

It will thus be seen that it is important to determine who was in fault in respect to this matter. Upon this point we have read the record very carefully and have reached the conclusion that the conduct of Brashears prevented the performance of the contract within the thirty days.

Hon was on the premises with his men for the purpose of branding the trees and he testifies in substance that he was branding all the trees called for in the contract between Pursifull and Brashears when stopped by Brashears, who said that only trees that were absolutely clear of defects should be branded; that a tree that had a little limb within the twenty-four feet was not a clear tree; that according to Brashears' contention there would only have been twenty or twenty-five trees in the boundary that could be branded; that he was willing and wanted to take and brand trees reasonably clear of defects, but when Brashears would not permit this he thought it would be a waste of time and money going over the boundary and only branding the few trees they could find that would fill the contract according to Brashears; that he had large experience in buying timber and had never before heard the seller object to the purchaser taking trees because there were some defects in them; that from the way Brashears acted he concluded that he did not want them to have the timber.

John W. Gent and J. W. Combs, experienced timber men, who were present with Hon for the purpose of

branding the trees, testified substantially the same as Hon in respect to what happened.

Pursifull, after saying that he and Brashears estimated the number of trees in the boundary that would be covered by the contract to be about thirty-five hundred, testified that he sold the trees to Hon at a profit of about seven hundred dollars, and that if Brashears had permitted Hon to take the trees he would have cleared this amount of money on his contract with Hon. He said he was present on the first day in the afternoon when Hon and his men commenced branding the trees and the next morning when Hon telephoned him that Brashears had stopped the branders, he called up Brashears over the telephone and demanded that he should permit the men to brand the trees according to the contract; that Brashears said that according to the contract each tree should be clear of defects, and they could only brand trees that were clear of defects, and he would not let them brand any other kind; that he was able, ready and willing to perform his part of the contract within the thirty days and would have done so except for the refusal of Brashears to let the trees be branded by Hon and his men according to the terms of the contract. He further said that he went to see Brashears two or three times within the thirty days, and requested him to let the trees be branded, but he would not do it; that in June, 1913, he learned that Brashears had sold the timber to Mowbray & Robinson Company for a sum considerably larger than he was to pay, and that Mowbray & Robinson Company knew at the time they bought the timber from Brashears of his contract with Brashears; that they tried to buy the timber from him and he declined to sell it because he had sold it to Hon. He said that Brashears told him more than once that he had sold the timber to him too cheap; that his last conversation with Brashears was shortly before he sold the trees to Mowbray & Robinson Company, and in this conversation he insisted that Brashears should let him take the trees and Brashears said he would not; that he was going to get a lawyer and "beat my contract;" that after he learned that he had sold the trees to Mowbray & Robinson Company he brought this suit; that he never told Brashears that he did not want the timber or that he might sell it to somebody else, but on the contrary was always insisting that Brashears should let him have the timber.

Brashears testified in substance that the reason he did not let Hon brand the trees was because Hon wanted to take and brand oak trees that had defects, but would not take or brand other less valuable trees unless they were entirely free from defects, and accordingly was seeking to get the advantage of him by getting his best timber and leaving the less valuable; that when he insisted that all timber should be treated alike, Hon refused to go ahead with the branding and quit. He further said that soon after Hon quit he saw Pursifull and asked him to take up the timber according to the contract before it expired, but Pursifull told him his contract "would never run out," and at another time, and after the expiration of the thirty days, Pursifull told him that he did not have any further claim on the timber under the old contract but would buy it under a new contract if he would sell it to him.

He, however, further said that he had an offer from one French to buy the timber and asked Pursifull to release his contract, which he declined to do; that this conversation took place after Pursifull told him he had no further claim on the timber and shortly before, he sold the timber to Mowbray & Robinson Company, to whom he sold because he needed the money and was under the impression that Pursifull had surrendered his claim to it

James Duff, who bought the trees from Brashears for Mowbray & Robinson Company, testified that he knew of the contract between Pursifull and Brashears before he bought the trees, and Pursifull told him that if he wanted to buy the timber to go ahead and do it, and then he bought the timber for Mowbray & Robinson Company.

William Gent, testifying for Brashears, said that he was one of the branders employed by Hon, and he supported the evidence of Brashears as to the cause of the trouble between Brashears and Hon.

Wade Brashears, a son of W. C. Brashears, corroborated his father in reference to some conversations with Pursifull; and Charles Fraser, another witness for Brashears, testified that he was one of the branders with Hon and that Brashears insisted that the timber must be branded according to the contract; that Brashears contended that the contract called for absolutely clear-bodied trees, and refused to let them brand any trees except those the contract called for, according to his

construction of it; that Hon told them to brand anything that they thought was worth the price he was paying for it, and that in branding the timber they acted according to the customary method in branding trees.

Without reciting further the evidence, we think the weight of it shows (1) that Brashears prevented Pursifull, through his assiginee, Hon, from performing the contract on his part within the thirty days, as he was able and willing to do; (2) that Pursifull did not thereafter in any manner abandon the contract but was insisting on his right to the timber under his contract up to the time Brashears sold to Mowbray & Robinson Company, or at least very shortly before this time; (3) that Mowbray & Robinson Company purchased the timber with actual knowledge of the contract between Pursifull and Brashears.

Accordingly we think Pursifull should have a judgment against Brashears and Mowbray & Robinson Company for the profit he would have made on his contract with Hon if this contract had been carried out. The amount of damage to which he is entitled should be determined by the lower court on a return of the case.

Wherefore, the judgment is reversed with directions to ascertain the damage Pursifull is entitled to, and enter judgment therefor.